1 | ~~PHILLIP A. BOCK~~
~~(phil@bockhatchllc.com)~~
2 | RICHARD J, DOHERTY
(rich@bockhatchllc.com)
3 | BOCK HATCH, LLC
134 N. LaSalle, Suite 1000
4 | Chicago, IL 60602
Phone: (312) 658-5500
5 | Fax: (312) 658-5555

6 | ROBERT W. SCHMIEDER, II
(robs@lakinlaw.com)
7 | THE LAKIN LAW FIRM, P.C.
301 Evans Avenue, P.O. Box 27
8 | Wood River, IL 62095
Phone: (618) 254-1127
9 | Fax: (618) 254-0193

10 | INGRID M. EVANS (SBN 179094)
(ievans@waterskraus.com)
11 | DAVID L. CHENG (SBN 240926)
(dcheng@waterskraus.com)
12 | WATERS & KRAUS LLP
601 Van Ness Avenue, Suite 2080
13 | San Francisco, CA 94102
Phone: (800) 226-9880
14 | Fax: (214) 777-0470

15 | Attorneys for Plaintiff

ORIGINAL
FILED

NOV 20 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

E-filing

WHA

17 | UNITED STATES DISTRICT COURT

18 | NORTHERN DISTRICT OF CALIFORNIA

CV 08 5269

| | |
|---|---|
| 19 PETER C. WACHOWSKI, on Behalf of | ) Case No. |
| 20 Himself and All Others Similarly Situated and | ) |
| the General Public, | ) CLASS ACTION COMPLAINT FOR: |
| 21 | ) |
| Plaintiff, | ) 1. Violation of Consumers Legal Remedies |
| 22 | ) Act, Civil Code §1750; |
| vs. | ) 2. Breach of Implied Warranty of |
| 23 | ) Merchantability; and |
| CLOROX COMPANY, | ) 3. Violation of Unfair Competition Law, |
| 24 | ) Business and Professions Code §17200 |
| Defendant. | ) |
| 25 | ) DEMAND FOR JURY TRIAL |

26

27

28

CLASS ACTION COMPLAINT

1    Plaintiff Peter C. Wachowski ("Wachowski" or "Plaintiff"), by and through his attorneys,

2    brings this action on behalf of himself and all others similarly situated against Clorox Company

3    ("Clorox" or the "Defendant"). Plaintiff hereby alleges, on information and belief, except for

4    information based on personal knowledge, which allegations are likely to have evidentiary support

5    after further investigation and discovery, as follows:

6                                    **NATURE OF THE ACTION**

7         1.    Clorox sells Clorox Automatic Toilet Bowl Cleaner With Bleach (the "Product") in

8    California and throughout the United States. In so doing, it represents and warrants on each and

9    every box sold that the Product will not harm plumbing. This statement is not true.

10        2.    In reality, the Product contains highly corrosive chemicals that, upon contact, attack

11   plastic, rubber and metal toilet tank components causing them to disintegrate, warp, swell and

12
     blister, ruining these parts. This corrosion causes these parts to fail, resulting in water leaking from
13
14   the toilet tank and forcing consumers to replace these components long before they would otherwise

15   need replacing.

16        3.    Thus, when used as directed, the Product is not fit for the ordinary purpose for which

17   it is intended.

18
          4.    Clorox is well aware of the damage caused by the Product, yet nonetheless makes this
19
20   false representation in order to maintain and increase sales. California consumer protection laws, as

21   well as the consumer protection laws of each of the other states, prohibit this conduct.

22                                   **JURISDICTION AND VENUE**

23        5.    Original jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332(d)(2).

24   Plaintiff alleges, upon information and belief, that less than one-third of all class members reside in

25   the State of California and the cumulative amount in controversy for the class exceeds $5,000,000.

26
     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367
27
28   (2005).

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the counts asserted here occurred in this district and because Defendant:

      (a)    has located its corporate headquarters in this district;

      (b)    is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its Product in this district; and

      (c)    does substantial business in this district.

## PARTIES

7. Plaintiff Wachowski resides in Cook County, Illinois. During the Class period, Plaintiff purchased and used the Product, suffered injury in fact and has lost money and property as a result of the unfair competition described herein.

8. Defendant Clorox is incorporated in Delaware. Its company headquarters is located in Oakland, California. Clorox is registered to do business in the State of California, and is doing business in the State of California. Clorox sells the Product to consumers throughout the United States, including tens of thousands of consumers in California.

## DEFENDANT'S UNLAWFUL CONDUCT

9. The Product is designed to be placed in the toilet tank and to slowly release chemicals into the water held in the tank. These chemicals are highly corrosive. The Product contains chlorine and bromine. Because the chemicals are released into the tank water, these corrosive chemicals are in continuous contact with the plastic, rubber and metal toilet tank components. As a result, the chemicals cause these components to disintegrate, warp, swell and blister.

10. Other products used to clean and disinfect toilet bowls, including products made, marketed and sold by Clorox, have different chemical compositions that do not harm the tank

components. Also, other products hang in the toilet bowl, and are not placed in the tank, so that the corrosive chemicals only come into contact with the porcelain bowl, and not any parts that can be damaged.

11.    As the manufacturer of the Product, Clorox possesses specialized knowledge regarding the content and effect of the chemicals contained in the Product and is in a superior position to learn of the effects and has learned of the damaging effects its Product will have on its customers' tank components.

12.    For example, Clorox conducted its own independent testing of its Product which, based on information and belief, indicated that its Product was highly corrosive in nature and caused damage to toilet tank components.

13.    In addition, independent one-year exposure tests have demonstrated that the Product materially damages toilet valves, destroys toilet flappers and corrodes the metal and other exposed plastic parts in the toilet tank. Clorox has been aware of these tests and their results from the time the tests were conducted.

14.    For example, in depth testing over a 5-year period by the California Metropolitan Water District ("MWD") revealed that the Clorox Product severely damaged the in-tank flush valve closure mechanism (aka, the "toilet flapper") that controls the flow of water from the tank into the bowl (*i.e.*, prevents leakage), materially reducing the effectiveness of the MWD's water conservation efforts through the promotion and funding of ultra-low-flush toilets. In a series of reports, the MWD describes the tests it conducted on chlorinated in-tank toilet tablet products, including the Clorox Product, as part of its ultra-low-flush toilet water conservation program. *See* Ex. 1 (1996 MWD Test Report) at p. 3; Ex. 2 (1998 MWD Test Report) at p. i, 4; Ex. 3 (2000 MWD Test Report) at Introduction, p. 3 and Study Background, p. 3, attached hereto.

15.     Similarly, the California Metropolitan Water District ("MWD") tested toilet tablet products, including the Product, and distributed the test results throughout the industry. These tests showed the corrosive effect the Product has on toilet tank parts, which resulted in water leakage.

16.     Clorox knew about and participated in the MWD's tests at the time the tests were performed. In fact, Clorox provided the samples of its Product used in the tests. *See* Ex. 2, at p. I and 4; Ex. 3, at Introduction, p. 3.

17.     Clorox also helped formulate and consulted on the proper testing protocol. *See* Ex. 1, at p. 3; Ex. 2, at p. I and 4; Ex. 3, at Study Background, p. 3.

18.     In its 1996 Report, the MWD reported that the Clorox Product caused leakage to occur in less than one month of exposure. *See* Ex. 1 at p. 8 and Attachment D thereto.

19.     Two years later, in its 1998 Report, the MWD reported that the Clorox Product affected all of the flappers tested and caused several of them to leak after only 30 days of exposure. *See* Ex. 2 at p. 9, 12 and Tables 9 and 10 thereto. The MWD test results were distributed throughout the industry, including to Clorox.

20.     Because the chlorinated in-tank toilet tablet manufacturers, including Clorox, continued to sell the tablets in their demonstrated harmful formulations, the industry took action. In 2001, a team from the American Society of Mechanical Engineers ("ASME") and the American National Standards Institute ("ANSI") was formed to "work[ ] with the toilet industry and automatic toilet tank cleaner suppliers to develop a test that would both set a standard durability test for tank trim and that would set limits on the chemicals used in automatic toilet tank cleaners." *See* Ex. 4, at p. iv, excerpt of ASME A112.19.5 Standards. Clorox was part of the team. *See* Ex. 5, Chemicals/Material Durability – Sub Task Group Roster. Unfortunately, the committee was unsuccessful based primarily on the tablet manufacturers' refusal to be cooperative and meet the goals of the committee.

21.     Even though Clorox was fully aware of the damage caused by its Product, and actively worked to successfully quash efforts to address the problem, Clorox falsely represented in its advertisements and Product packages that its Product was safe and "does not harm plumbing," which Clorox knew or should have known was not true.

22.     Clorox could have and should have ceased selling this Product and instead offer for sale alternative formulations that do not have these destructive side-effects.  Clorox could have easily modified the Product's design and/or formulation to protect against toilet damage but it chose not to do so.

23.     Further, despite its knowledge of the damage caused by the Product, Clorox sold, and continues to sell, a defective product to consumers, voluntarily promising and expressly warranting to purchasers that the Product would not harm their toilets.  Specifically, Clorox uniformly represents that the Product "does not harm" the plumbing.  This representation was made in writing on each and every box of the Product sold to Plaintiff and the other members of the Class throughout the Class period. Every Clorox Product sold to Plaintiff and Class members during the Class period came packaged in a box containing the "does not harm plumbing or septic tanks" written representation.  Defendant included this safety assurance language to bolster Product sales.  This representation was one of the few that appeared on the Product box and was very prominently displayed.

24.     Defendant continued to market its Product in packages containing this uniform material safety assurance language even though it knew its Product was not safe to toilet components but rather was highly corrosive and did, in fact, harm plumbing.

25.     Defendant continued to manufacture and sell its defective Product even after it became aware or should have been aware that laboratory tests demonstrated that its Product, when used as directed, damaged the toilet tank components. Defendant knew or should have known about

the falsity of the representation no later than 1996, when the first of the MWD test results were provided to Defendant.

26.     Defendant has not disclosed to Plaintiff and Class Members, on its Product packages or otherwise, the corrosive nature of its Product.  Other products that are equally effective, but actually do not harm plumbing, have been widely available at the same cost throughout the Class period.

27.     By not disclosing the corrosive nature of its Product and falsely representing its Product as safe for toilet components, Clorox intended to defraud Plaintiff and Class members, inducing them to purchase its Product.

28.     Plaintiff and Class members had a reasonable expectation as consumers that the Product would not ruin the parts in their toilet tank and reasonable belief on Defendant's representations on the Product package and in its advertisements that the Product "does not harm" the toilet tank components.  Had they known the true facts, they would not have bought the Product. As a result, Plaintiff and the Class have incurred damages, specifically the price they paid to purchase the defective Product.

29.     At the same time, by falsely representing that its Product was safe, Defendant's Product has sold and it has wrongfully profited.

## ALLEGATIONS CONCERNING THE PLAINTIFF

30.     Plaintiff purchased the Product from Sam's Club in Des Plaines, Illinois beginning in approximately 2005, and paid the retail price of approximately $9.00 for each 6 tablet package.

31.     The Product Plaintiff purchased was packaged in a box that represented the Product would "not harm" his plumbing.

32.     Plaintiff read the package and reasonably believed that representation to be true.

33.     Plaintiff purchased and used the Product believing it was reasonably safe for the purpose of cleaning and disinfecting his toilet bowl. Plaintiff did not expect the Product to damage the toilet tank components.

34.     After using the Product as directed for less than one year, Plaintiff noticed that his toilet was continually running because the rubber flapper inside his toilet had warped and deteriorated. The flapper no longer functioned properly and would not form an adequate seal. Prior to using the Product, Plaintiff had experienced no problems with his flappers.

35.     Plaintiff had to replace the damaged flapper with a new one. He purchased a new flapper and installed it in his toilet.

36.     As of **November 2008**, Plaintiff has ceased purchasing the Product now that he has learned of the damage it causes.

37.     Plaintiff has suffered injury in fact and lost money and property as a result of the alleged conduct. He has also lost money as a result of the alleged conduct because he paid for the Product and paid to purchase a new flapper. Further, he lost property when the original flapper deteriorated. He has also suffered damage in the amount paid for the Product because he purchased a product that was not safe as represented.

38.     Had Plaintiff known the Product would cause his flapper, flush valve and other rubber, metal and plastic toilet components to warp, swell, blister and crack, he would not have purchased or used the Product.

39.     Plaintiff is not challenging, either individually or on behalf of those similarly situated, the adequacy of the warnings provided on Defendant's Product packages and Plaintiff does not seek to require labeling or packaging in addition to or different from that required under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. §136 *et seq.* and Federal Hazardous Substances Act, 15 U.S.C. §1261 *et seq.*

# CLASS ALLEGATIONS

40.     Plaintiff Wachowski brings this action on behalf of himself and all those similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).  The Class of persons which Plaintiff seeks to represent is defined as:

> All persons in the United States who, within the applicable statute of limitations, purchased Clorox Automatic Toilet Bowl Cleaner With Bleach (the "Class" or "Class members").
>
> Excluded from the Class are the Defendant, any parent, subsidiary or affiliate of the Defendant, any entity in which the Defendant has a controlling interest, and the respective officers, directors, employees, agents, legal representatives, heirs, predecessors, successors, and assigns of such excluded persons or entities.

41.     Plaintiff also seeks certification of claims for restitution, disgorgement and monetary and exemplary damages under the consumer protection statutes of California and similar statutory enactments of the other states in which Defendant conducts business.

42.     Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impracticable.

43.     There are questions of law and fact common to the Class.

44.     Plaintiff's claims are typical of the claims of the members of the Class.  The named Plaintiff is a member of the Class of victims described herein.

45.     The named Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all of the obligations and duties material thereto.  Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

46.     The self-interests of the named Class representative is co-extensive with, and not antagonistic to, those of the absent Class members.  The proposed representative will undertake to represent and protect the interests of the absent Class members.

47.     The named Plaintiff has engaged the services of counsel indicated below.  Counsel are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the named Class representative and absent Class members.

48.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

49.     This action involves questions of law and fact common to Plaintiff and all members of the Class concerning violations of common law and state consumer protection statutes.  These common questions predominate over any issues affecting individual members of the Class and include:

(a)     whether the representation on the Product packaging were true;

(b)     whether the  Product harmed toilet tank components when used as directed;

(c)     whether Defendant knew the claims it made were inaccurate, incorrect, false or misleading;

(d)     whether feasible alternative non-destructive design and/or formulations of the Product were possible;

(e)     whether Defendant's Product was fit for its intended purpose; and

(f)     whether Plaintiff and Class members have been harmed and the proper measure of  relief.

50.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

51.     There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically

infeasible for Class members to pursue remedies individually. The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class members against Defendant and would establish incompatible standards of conduct for Defendant.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)     given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

(b)     when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

(c)     this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

(d)     without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

53.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

54.     Plaintiff seeks damages and/or restitutionary relief on behalf on the entire Class on grounds generally applicable to the entire Class.

# COUNT I

## (For Violations of the Consumers Legal Remedies Act – Injunctive Relief Only)

55.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herewith.

56.     This cause of action is brought under the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act"). Plaintiff is a consumer as defined by California Civil Code §1761(d). Defendant's Product is goods within the meaning of the Act.

57.     Defendant violated and continues to violate the Act by engaging in the following deceptive practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff which were intended to result in, and did result in, the sale of Defendant's Product:

(5)     Representing that [the Product has] characteristics, . . . uses [or] benefits . . . which [it] does not have.

\*     \*     \*

(7)     Representing that [the Product is] of a particular standard, quality or grade, . . . if [it is] of another.

\*     \*     \*

(9)     Advertising goods . . . with the intent not to sell them as advertised.

\*     \*     \*

(16)     Representing that [the Product] has been supplied in accordance with a previous representation when it has not.

58.     Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

59.     Pursuant to California Civil Code §1782(d), Plaintiff seeks a Court order enjoining the above-described wrongful acts and practices of Defendant.

60.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

## COUNT II

### (For Breach of Implied Warranty of Merchantability)

61.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herewith.

62.     Defendant is in the business of manufacturing and distributing automatic bowl cleaners for the benefit of consumers.

63.     By placing its Product in the stream of commerce, Defendant impliedly warrants that its Product is reasonably safe for its intended use, *i.e.*, to be placed in the toilet tank to clean and disinfect the toilet bowl.

64.     Defendant's Product is not merchantable. In breach of its implied warranty, Defendant's Product attacks and damages the parts in the toilet tank.

65.     Defendant's Product was not reasonably safe for its intended use when it left Defendant's control and entered the market.

66.     The Product defects were not open or obvious to consumers.

67.     The Product causes Plaintiff's and Class members' toilet tank components to discolor, disintegrate, warp, swell and/or blister.

68.     As a result, Plaintiff and Class members have been damaged in, *inter alia*, the amount they paid to purchase the unmerchantable Product.

**(For Violation of Business & Professions Code §17200, *et seq.*)**

69.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herewith.

70.     California Business & Professions Code §17200, *et seq.* prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice," any "unfair, deceptive, untrue or misleading advertising" and any act prohibited by Business & Profession Code §17500.

71.     Clorox violated California Business & Professions Code §17200's prohibition against engaging in an "unlawful" business act or practice, by, *inter alia*, selling the defective and non-merchantable Product to consumers and the general public, selling misbranded goods in violation of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), failing to use reasonable care to test the Product prior to sale, continuing to voluntarily and expressly warrant the Product without the intent to uphold its warranty, continuing to sell the Product after learning that the Product damaged toilet tank components, in violation of California Civil Code §1791.2, violating California Civil Code §§1770, violating California Civil Code §§1572, 1573, 1709, 1710, 1711 and 3300, by omitting facts it had a duty to disclose and by otherwise violating the common law.

72.     Clorox also violated California Business & Professions Code §17200's prohibition against engaging in an "unfair" business act or practice by, *inter alia*, systematically breaching its contracts with consumers and the general public, selling the defective and non-merchantable Product, continuing to sell the Product after learning that the Product damaged toilet tank components, violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, 1791.2 and 3300. Defendant's conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated. Further, Defendant's conduct caused and continues to cause substantial

injury to consumers and their property. The gravity of Clorox's alleged wrongful conduct outweighs any purported benefits attributable to such conduct. There were also reasonably available alternatives to Clorox to further its business interests, other than voluntarily placing its defective Product into the stream of commerce.

73.     The foregoing conduct also violates Business & Profession Code §17200's prohibitions against "fraudulent" business practices as described above, including, *inter alia*, continuing to sell the Product after learning that the Product damaged toilet tank components, making false and misleading representations, by omitting facts it had a duty to disclose, and by otherwise violating the common law.

74.     Clorox also violated California Business & Professions Code §17200's prohibition against engaging in an "unfair, deceptive, untrue or misleading advertising" and/or any act prohibited by Business & Profession Code §17500 by engaging in the unfair, deceptive, untrue and misleading advertising described above, including representing that the Product does not harm plumbing when, in fact, it does.

75.     Plaintiff reserves the right to allege other violations of law which constitute other "unlawful, unfair or fraudulent business act or practice," any "unfair, deceptive, untrue or misleading advertising" and any act prohibited by Business & Profession Code §17500. Such conduct is ongoing and continues to this date.

76.     The foregoing conduct also constitutes "unfair" business acts and practices within the meaning of Business & Profession Code §17200, *et seq*. Defendant's conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated. Further, Defendant's conduct caused and continues to cause substantial injury to consumers and their property. The gravity of Clorox's alleged wrongful conduct outweighs any purported benefits attributable to such

conduct. There were also reasonably available alternatives to Clorox to further its business interests, other than voluntarily placing its defective Product into the stream of commerce.

77.     Clorox, thus, has engaged in acts, practices and advertising entitling Plaintiff to judgment and equitable monetary relief against Clorox, in the form of the purchase price of the Product Plaintiff and Class Members purchased and injunctive relief, as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

A.     Certify this action as a Plaintiff class action;

B.     Award compensatory damages as to all Counts where such relief is permitted;

C.     Enjoin defendant's conduct and order defendant to engage in a corrective advertising campaign;

D.     Award equitable monetary relief, including restitution;

E.     Award pre-judgment and post-judgment interest at the legal rate;

F.     Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

G.     Such other and further legal and equitable relief as this Court may deem just and proper.

/ / / / /

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: November 20, 2008

WATERS & KRAUS LLP

_Ingrid M. Evans by olc_

INGRID M. EVANS

PHILLIP A. BOCK
(phil@bockhatchllc.com)
RICHARD J, DOHERTY
(rich@bockhatchllc.com)
BOCK HATCH, LLC
134 N. LaSalle, Suite 1000
Chicago, IL 60602
Phone: (312) 658-5500
Fax: (312) 658-5555

ROBERT W. SCHMIEDER, II
(robs@lakinlaw.com)
THE LAKIN LAW FIRM, P.C.
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095
Phone: (618) 254-1127
Fax: (618) 254-0193

INGRID M. EVANS (SBN 179094)
(ievans@waterskraus.com)
DAVID L. CHENG (SBN 240926)
(dcheng@waterskraus.com)
WATERS & KRAUS LLP
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102
Phone: (800) 226-9880
Fax: (214) 777-0470

Attorneys for Plaintiff